UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Brad Bigalke,

        Plaintiff,

  v.

State of Minnesota Department
of Veterans Affairs, and AFSCME
Council 5 AFL-CIO,

        Defendants.           Civ. No. 10-212 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motions to Dismiss.  A Hearing on the Motions was conducted on May 6, 2010, at which time, the Plaintiff Brad Bigalke appeared on his own behalf, and the State of Minnesota Department of Veterans Affairs (the "State") appeared by Sarah A. McGee, Assistant Minnesota Attorney General, and AFSCME Council 5 AFL-CIO (the "Union") appeared by Gregg M.

Corwin, Esq. For reasons which follow, we recommend that the Defendants' Motions to Dismiss be granted.

## II.  Factual and Procedural Background

On January 25, 2010, the Plaintiff commenced this action against the Defendants, in which he asserts claims against the State for disability discrimination under the Americans with Disabilities Act ("ADA"), see Title 42 U.S.C. §§12101 et seq.; disability discrimination under the Minnesota Human Rights Act ("MHRA"), see Minnesota Statutes Sections 363A.01 et seq.; for breach of contract; and for intentional infliction of emotional distress ("IIED"). See, Complaint, Docket No. 1 at pp. 9-10 ¶¶29-32. Additionally, although the Plaintiff's Complaint fails to explicitly assert a claim against the Union, in liberally construing the Plaintiff's pro se pleading, we also understand him to be asserting a claim for breach of the duty of fair representation against the Union.

Shortly after the Plaintiff filed his Complaint, the Defendants filed Motions to Dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. See, Union's Motion to Dismiss, Docket No. 4; State's Motion to Dismiss, Docket No. 11. On March 5, 2010, the District Court, the Honorable Joan N. Ericksen presiding, referred those Motions to us for a

Report and Recommendation, and those Motions are now before the Court.  See,

Docket No. 13.

By way of background, the Plaintiff formerly worked as a groundskeeper at the

Minnesota State Veterans Cemetery, in Morrison County, Minnesota (the

"Cemetery"), from April of 2004, until May of 2008, when his employment was

terminated.  See, Complaint at p. 7¶10 - p. 9¶26.  His father, who was a veteran of

World War II, was apparently instrumental in bringing the Cemetery to fruition.  Id.

at p. 7¶11.  In his Complaint, the Plaintiff alleges that Dave Swantek ("Swantek"),

who was his supervisor at the Cemetery, took a number of unlawful actions against

the Plaintiff, for which the State is responsible.  Id. at ¶12.

In February of 2008, the Plaintiff sustained a knee injury outside of work,

which prevented him from walking without assistance, and rendered him unable to

perform all of his groundskeeping duties.  Id. at ¶13. Shortly thereafter, the Plaintiff

underwent surgery for that injury, and following that surgery, the Plaintiff's doctor

told him that his knee "would probably get back to normal eventually."  Id. at ¶14.

The Plaintiff alleges that, in March of 2008, he asked Swantek if he could be placed

in an open office position, which was vacant while an employee was on maternity

leave.  Id. at pp. 7-8¶15.  According to the Plaintiff, he was qualified for that position,

but he "was not given that accommodation." Id. The Plaintiff alleges that, by May of 2008, his injury was sufficiently healed so as to permit him to return to work. Id. at p. 8¶16.

According to the Plaintiff, Swantek asked him to attend a meeting at the Cemetery on May 8, 2008, but Swantek never showed up for the meeting. Id. at ¶18. After waiting for approximately thirty (30) minutes, the Plaintiff was informed that the meeting had been rescheduled for May 16, 2008. Id. At the meeting on May 16, 2008, the Plaintiff gave Swantek a note from his doctor, which stated that the Plaintiff was able to return to work. Id. at ¶19. However, Swantek would not permit the Plaintiff to return to work, but instead, he required the Plaintiff to be placed on administrative leave until such time as he had an examination by another doctor located in St. Cloud. Id.

The Plaintiff further alleges that his father had passed away in November of 2007, at which time, it was too cold for the headstone to be placed, and as a result, the Cemetery planned to place his father's headstone in the Spring of 2008. Id. at p. 7¶11. In or around May of 2008, the Plaintiff was informed that his father's headstone had arrived for placement. Id. at p.8 ¶17. On May 19, 2008, shortly after he was placed on administrative leave, the Plaintiff called the Cemetery to ask when his father's

headstone would be placed, and a coworker informed him that the headstone would be placed the next day. Id. at ¶¶20-22.

According to the Plaintiff, when Swantek found out that the Plaintiff wanted to be present for the headstone placement, he ordered the coworker to have the headstone placed later that day without telling the Plaintiff or the Plaintiff's mother. Id. at p. 9¶23. The Plaintiff alleges that Swantek intentionally tried to keep him, and his mother, from observing the placement of his father's headstone, and told people that his knee injury made him a danger to other people, even though he knew it to be false. Id. at ¶28. The Plaintiff asserts that the incident caused him to become sick, and that he could not eat or sleep, as a result. Id. at ¶24. On May 21, 2008, Swantek terminated the Plaintiff's employment with the Cemetery. Id. at ¶26.

The Union is the exclusive representative of certain employees of the State, which includes employees of the Cemetery. See, Union's Memorandum in Support, Docket No. 15, at p. 2. The Plaintiff was a member of a bargaining unit that was represented by the Union during his employment at the Cemetery. Id. With respect to the meeting, at which he was terminated, the Plaintiff alleges as follows:

> I knew I had the right to have a union representative with me and the right to review why [Swantek] wanted to fire me. [Swantek] also knew I had that right, but he said I only

had until 2:00 p.m. to get a union representative there. I told him that my union representative was in St. Paul and I asked for the opportunity to have her with me, but he did not care. He denied that request, and later that day he fired me.

Complaint, Docket No. 1, at p. 9¶27.

As a consequence, the Plaintiff alleges that Swantek fired him without following the terms of the Collective Bargaining Agreement ("CBA").

Thereafter, on December 19, 2008, the Plaintiff filed a charge of discrimination against the State with the Equal Employment Opportunity Commission ("EEOC"). See, Complaint at pp. 3-4¶6; Docket No. 1-1. Based upon its investigation, the EEOC was "unable to conclude that the information establishe[d] violations" of the law, and accordingly, on October 29, 2009, it issued a dismissal of his charge, and a notice of his right to sue. Docket No. 1-1.

In his Response to the pending Motions, the Plaintiff further alleges that on June 16, 2008, he filed a grievance, based upon the circumstances of his termination.[1] See, Plaintiff's Response to the Union's Motion, Docket No. 22 at p. 2¶3; Plaintiff's

_____

[1] The parties' submissions reflect that Swantek believed that the Plaintiff had altered a doctor's form that he disagreed with, which he then submitted to the Cemetery. However, we find that this issue is irrelevant for present purposes, since we find that it has no bearing on whether the Plaintiff has adequately stated a claim for disability discrimination.

Exhibits in Response to the Union's Motion, Docket No. 23, at p. 1 of 3.  The Plaintiff

further alleges that the State denied his grievance on July 19, 2008, and that the Union

dismissed his grievance on August 25, 2008.  Plaintiff's Response to the Union's

Motion at p. 2¶4; Plaintiff's Exhibits - Union's Motion at p. 3.  He contends that,

thereafter, he repeatedly contacted Union officials in order to request information

regarding the details of the Union's actions, and that, on March 23, 2009, the Union

notified the Plaintiff that it had already provided the Plaintiff with all of the

information it had regarding his case.  See, Plaintiff's Response to the Union's Motion

at p. 2¶5; Plaintiff's Exhibits - Union's Motion at p. 2 of 3.  We understand the

Plaintiff to allege that, contrary to that representation, the Union had not provided the

requested information, thereby obstructing his efforts to appeal the Union's decision

not to arbitrate his grievance.

    With the foregoing factual and procedural backdrop, we turn to a consideration

of the parties' arguments.

## III.  Discussion

A.    Standard of Review.  "When reviewing a Rule 12(b)(6) dismissal for

failure to state a claim, we look only to the facts alleged in the complaint and construe

those facts in the light most favorable to the [nonmoving party]."  Riley v. St. Louis

County of Mo., 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999),

citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir.

1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). In addition,

all reasonable inferences, from the facts alleged in the Complaint, must be drawn in

favor of the nonmoving party. See, Maki v. Allete, Inc., supra at 742. "A complaint

shall not be dismissed for its failure to state a claim upon which relief can be granted

unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in

support of a claim entitling him to relief."[2] Young v. City of St. Charles, Mo., 244

F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797,

799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, Maki v. Allete, supra

at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67

(D. Minn. 2001).

---

[2]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63 (2007)(The standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement."). Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 546; see also, Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"), quoting Bell Atlantic Corp. v. Twombly, supra at 570. Here, we apply the Supreme Court's "accepted pleading standard."

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")[citations omitted]; see also, Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"), quoting Bell Atlantic Corp. v. Twombly, supra at 556-57.

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(d), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

Materials necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity nobody questions, but which are not physically attached to the pleading." Fraenkel v. Messerli & Kramer, P.A., 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly Enters., 317 F.3d 820, 831 (8th Cir. 2003); see also, Jenisio v. Ozark Airlines, Inc., Retirement Plan, 187 F.3d 970, 972 n.3 (8th Cir. 1999)("A district court may consider documents on a motion to dismiss where * * * the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual

contents of the documents.").  Although the parties have submitted documents for our consideration, which we have made reference to, we have analyzed the Plaintiff's claims pursuant to Rule 12(b)(6), for a failure to state a claim, and accordingly, we have relied primarily upon the Plaintiff's allegations, rather than any evidence in the Record.[3]

B.   <u>Legal Analysis</u>.    The Defendants move for dismissal of the Plaintiff's Complaint, in its entirety, for failure to state a claim upon which relief can be granted,

---

[3]It is well-established that "[c]ivil rights pleadings are construed liberally." <u>Davis v. Hall</u>, 992 F.2d 151, 152 (8th Cir. 1993); see also, <u>Atkinson v. Bohn</u>, 91 F.3d 1127, 1129 (8th Cir. 1996).  In construing the Plaintiff's Complaint liberally, we have considered the materials submitted by the Plaintiff in response to the pending Motions as additional explanation of the nature and basis of the Plaintiff's claims, and accordingly, we have considered them in addressing the sufficiency of the Plaintiff's claims for relief.  See, <u>Dasta v. LeBlanc</u>, 132 Fed.Appx. 98, 100 (8th Cir. 2005)(the liberal reading should also include submitted exhibits as "they explained the basis for [the plaintiff's] claims against certain defendants."); <u>Thornton v. Phillips County, Ark.</u>, 240 F.3d 728, 729 (8th Cir. 2001)(objections to report and recommendation should have been treated as a motion for leave to amend the Complaint).  Nevertheless, we conclude that the additional allegations, which are contained in the Plaintiff's submissions, fail to remedy the fatal flaws in the Plaintiff's Complaint, and as such, we conclude that any request to amend, as evidenced by the Plaintiff's submissions in response to the Motions, would be futile.

We have considered the Plaintiff's submissions, in order to understand the nature and basis of his claims but, as we have noted, we have not considered the documents submitted by the State in ruling on the State's Motion to Dismiss.  See, <u>Affidavit of Sarah McGee, Docket No. 19</u>.

pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. As each Motion raises different issues, we will address the Motions separately.

1. <u>The Union's Motion to Dismiss</u>. In construing the Plaintiff's <u>pro se</u> Complaint liberally, as we must, see <u>Wishnatsky v. Rovner</u>, 433 F.3d 608, 610-611 (8th Cir. 2006), we understand the Plaintiff to be asserting a claim for the breach of the duty of fair representation against the Union.[4] See, <u>Union's Memorandum in Support</u>, supra at p. 1.

a) <u>Breach of the Duty of Fair Representation</u>.

i) <u>Standard of Review</u>. A union has a duty to fairly represent its members in negotiating, and enforcing, collective bargaining

---

[4]Out of an abundance of caution, the Union construed the Plaintiff's Complaint as potentially asserting a claim for disability discrimination against the Union, see <u>Union's Memorandum in Support</u>, <u>Docket No. 15</u>, at pp. 10-12, even though there were no allegations, which would plausibly disclose that he intended to assert a disability discrimination claim against the Union.

The Plaintiff did not address the Union's argument, in his Response, with respect to the potential disability discrimination claim, and accordingly, it was unclear whether the Plaintiff intended such a claim against the Union. However, at the time of the Hearing, the Plaintiff represented that he did not intend to assert a claim for disability discrimination against the Union. As a consequence, we have not addressed the Union's arguments, with respect to any potential disability discrimination claim, since no such claim was intended.

agreements.[5]  See, <u>Eisen v. State Dept of Public Welfare</u>, 352 N.W.2d 731, 735 (Minn.1984)[citing cases].  "A discharged employee whose union decides not to take his or her grievance to arbitration may sue both the union for breach of the duty of fair representation * * * and the employer for breach of the labor contract."  See, <u>Allen v. Hennepin County</u>, 680 N.W.2d 560, 563 (Minn.App. 2004), citing <u>Lipka v. Minn. Sch. Employees Ass'n, Local 1980</u>, 550 N.W.2d 618, 621 n. 7 (Minn. 1996).  In such a hybrid action, the employee must plead and prove the case against the union in order to succeed against the employer.  See, <u>Paoletti v. Northwestern Bell Telephone Co.</u>, 370 N.W.2d 672, 675 (Minn.App. 1985), rev. denied (Minn., September 26, 1985).

To establish that the Union breached its duty of fair representation, the Plaintiff must demonstrate that the Union's conduct was "'arbitrary, discriminatory, or in bad faith.'"  <u>Hansen v. Qwest Communications</u>, 564 F.3d 919, 923 (8th Cir. 2009), quoting <u>Vaca v. Sipes</u>, 386 U.S. 171, 190 (1967); see also, <u>Cross v. United Auto Workers, Local 1762</u>, 450 F.3d 844, 847 (8th Cir. 2006).  "'A union's actions are arbitrary only

---

[5]Since the Plaintiff was employed by a public employer -- that is, as he was employed by the State -- his employment relationship is governed by the Public Employment Labor Relations Act ("PELRA"), which was enacted under State law.  See, <u>Minnesota Statutes Sections 179.01 et seq.</u>; <u>Eisen v. State Dept. of Public Welfare</u>, 352 N.W.2d 731, 735 (Minn. 1984)("PELRA grants to public employees rights to organize and freely choose representatives who may be certified as the employees' exclusive representatives.").

if, in light of the factual and legal landscape at the time of the union's action, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" Hansen v. Qwest Communications, supra at 923-24, quoting Air Line Pilots Ass'n, Int'l v. O'Neil, 499 U.S. 65, 67 (1991).  Moreover, "'[m]ere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation,'" Id. at 924, quoting Buford v. Runyon, 160 F.3d 1199, 1202 (8th Cir. 1998), and "[a] union * * * does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit."  Cross v. United Auto Workers, Local 1762, supra at 847, quoting Sanders v. Youthcraft Coats & Suits, Inc., 700 F.2d 1226, 1229 (8th Cir. 1983); see also, Baird v. Burlington Northern and Santa Fe R.R. Co., 169 F. Supp.2d 1019, 1025 (D. Minn. 2001), aff'd, 24 Fed.Appx. 629 (8th Cir. 2001).

"A union owes a duty to all members of the bargaining unit, [and] therefore 'the union has the affirmative duty not to press grievances which the union believes, in good faith, do not warrant such action.'" Cross v. United Auto Workers, Local 1762, supra at 847, quoting Sanders v. Youthcraft Coats & Suits, Inc., supra at 1229.  In making out a breach of this duty, bad faith may be established by "evidence of fraud, deceitful action or dishonest conduct."  Thompson v. United Transp. Union, 588 F.3d

568, 572 (8th Cir. 2009), citing <u>Cross v. United Auto Workers, Local 1762</u>, supra at 847.

        ii)    <u>Legal Analysis</u>.    As a threshold matter, the Union argues that the Plaintiff's claim for a breach of the duty of fair representation is time-barred, because the allegedly wrongful conduct on the part of the Union occurred more than ninety (90) days prior to the filing of this lawsuit on January 25, 2010. We agree.

The Minnesota Courts have determined that a ninety (90) day statute of limitations applies to claims for a breach of the duty of fair representation, which are brought under Minnesota law. See, <u>Allen v. Hennepin County</u>, supra at 565 (recognizing that a ninety (90) day statute of limitation was consistent with the State's policy in favor of the prompt settlement of employment disputes, since "[l]abor relationships require stability, and the longer the period in which an employee has to bring his claim, the more uncertainty an employer faces in future hiring and staffing decisions."); see also, <u>Onyiah v. St. Cloud State University</u>, 655 F. Supp.2d 948, 967 (D. Minn. 2009)(recognizing that the Minnesota Court of Appeals has determined that the ninety (90) day statute of limitations period, that applies to vacating arbitration

awards under the Uniform Arbitration Act, is also applicable to a claim for a breach of the duty of fair representation).

A claim for a breach of the duty of fair representation accrues when the employee learns that the union is not pursuing the employee's grievance. See, <u>Allen v. Hennepin County</u>, supra at 566 (the unlawful conduct "is premised on the union not pursuing the employee's claim, which is known to the employee and employer upon the union's notification that it is not [pursuing] the grievance," and concluding that the "appellant discovered the cause of action on the day he received the union's letter [of notification] and had 90 days to file his claim."); see also, <u>Skyberg v. United Food and Commercial Workers Intern. Union, AFL-CIO</u>, 5 F.3d 297, 301 (8th Cir.1993)(the statute of limitations "begins to run when the employee knows or reasonably should know that the union has breached its duty of fair representation."); <u>Schuver v. MidAmerican Energy Co.</u>, 154 F.3d 795, 800 (8th Cir. 1998).

Here, the Plaintiff alleges that the Union informed him that it would not pursue his grievance in arbitration on August 25, 2008. See, <u>Plaintiff's Response - Union's Motion</u>, supra at p. 3 of 3. The Plaintiff further alleges that he attempted to appeal the Union's decision not to pursue his grievance in arbitration, but that the Union failed to give him access to essential information, in violation of the law. <u>Id.</u> According to

the Plaintiff, he received a letter on March 23, 2009, in which a Union representative told him that it had provided him with all of the information that it had regarding his case. See, <u>Plaintiff's Exhibits - Union's Motion,</u> supra at p. 2 of 3. At the time of the Hearing, the Plaintiff represented that he did not allege that the Union had engaged in further unlawful conduct, after he received that letter on March 23, 2009.

Here, all of the Union's acts that the Plaintiff is challenging, by the Plaintiff's own admission, occurred no later than March 23, 2009. Even construing the Plaintiff's allegations liberally, and assuming that the Plaintiff's claim did not accrue until March 23, 2009 -- that is, on the last possible date on which the Plaintiff should have learned of the Union's allegedly unlawful conduct -- he still filed this lawsuit approximately seven (7) months after the statute of limitations expired on June 21, 2009. See, <u>Hayhurst v. Bradley</u>, 980 F.2d 734 (8th Cir. 1992)[Table Decision] (affirming the District Court's granting of a Rule 12(b)(6) Motion where the "complaint revealed that [the plaintiff's] cause of action was time-barred, and did not allege any excuse which would toll the statute."); <u>Varner v. Peterson Farms</u>, 371 F.3d 1011, 1016 (8th Cir. 2004)("[W]hen it 'appears from the face of the complaint itself that the limitation period has run,' a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss."), quoting <u>Wycoff v. Menke</u>, 773 F.2d

983, 984-985 (8th Cir. 1985)(affirming dismissal of complaint where it was clear on its face that it was time-barred), cert. denied, 475 U.S. 1028 (1986); Chamernick v. United Steelworkers of America, Local 2660, 2009 WL 1209467 at *6-7 (D. Minn., May 1, 2009)(dismissing claim for a breach of the duty of fair representation where the plaintiffs filed the lawsuit well after they discovered or should have discovered the acts constituting the alleged violations); Moss v. Advance Circuits, Inc., 981 F. Supp. 1239, 1253 (D. Minn. 1997)(concluding that the plaintiff could not bootstrap her duty of fair representation claim against the union onto her Title VII and MHRA claims, where the plaintiff filed suit only after receiving a right to sue letter, but after the statute of limitations had expired on her breach of the duty of fair representation claim).

Moreover, the Plaintiff has failed to advance any basis for tolling the statute of limitations, but rather, his only justification is that he was unaware that the statute of limitations was running. However, that is an insufficient basis for tolling the statute of limitations. See, Wiese v. Bakewell, 2009 WL 277568 at *3 (D. Neb., February 4, 2009)(pro se litigant's unawareness of the applicable statute of limitations is insufficient to equitably toll the statue of limitations). As a consequence, based upon

the Plaintiff's allegations, it is clear that there are no grounds that justify an equitable tolling of the statute of limitations, and that his claim against the Union is time-barred.

In sum, the Plaintiff's claim for a breach of the duty of fair representation is time-barred, based upon the face of the Plaintiff's allegations, and accordingly, we recommend that the Union's Motion to Dismiss be granted, and that the Plaintiff's claim for a breach of the duty of fair representation be dismissed, with prejudice.

2.    The State's Motion to Dismiss.  As previously noted, the Plaintiff has asserted claims against the State for disability discrimination under the ADA and the MHRA, for IIED, and for a breach of contract.[6]  The State argues that the Plaintiff

---

[6]In his Response, the Plaintiff makes references to the Occupational Safety and Health Act, see Title 29 U.S.C. §651 et seq. ("OSHA"), and as such, we recognize that he may be attempting to raise a retaliation claim under OSHA.  See, Plaintiff's Response - State, Docket No. 26, at p.2¶¶1, 4.  However, the Plaintiff did not specifically state that he was seeking to amend his Complaint, in order to assert a claim for retaliation.  To the extent that the Plaintiff intended to seek leave to assert such a claim, we would find such a request futile, since the Plaintiff clearly alleges that he did not report any OSHA violations to an outside agency.  Id. at ¶4.  While the Plaintiff alleges that he did not report the violations because he was afraid of his employer's actions, this is simply insufficient to state a retaliation claim.  Id.; see also, Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir. 1993)(an OSHA retaliation claim requires the plaintiff to show that he engaged in protected activity, that the employer subsequently engaged in adverse employment action, and that there is some causal connection between the protected activity and the subsequent adverse employment action).  Here, there is simply no protected activity, since the Plaintiff admittedly did not report any asserted OSHA violations, on the part of the State.  As
(continued...)

has failed to state a claim for disability discrimination under the ADA. The State further argues that, because the Plaintiff has failed state a plausible claim for disability discrimination under the ADA, we should decline to exercise supplemental jurisdiction over the Plaintiff's remaining claims. Lastly, the State argues that the Plaintiff has failed to state a claim for disability discrimination under the MHRA, and for IIED, and that the Plaintiff's breach of contract claim is barred, since the CBA's grievance procedure is the Plaintiff's exclusive remedy for a breach of the CBA.

Accordingly, we turn first to the Plaintiff's disability discrimination claim under the ADA.

---

[6](...continued)
such, any potential OSHA retaliation claim would clearly be futile.

Moreover, in his Response to the State's Motion, the Plaintiff also alleges that he was terminated for reporting Swantek's mismanagement of the Cemetery, and that "[i]t is a violation of the law to be terminated for disclosing unethical practices by management." See, Plaintiff's Response - State, supra at p.2¶4. However, the Plaintiff has failed to assert any legal basis for the assertion that reporting a supervisor's mismanagement is a legally protected activity, and the Court is not aware of any legal basis for such a claim, and as such, we find that any attempt to assert a retaliation claim, premised on reporting mismanagement, would clearly be futile.

a)    <u>Disability Discrimination under the ADA</u>.

i)    <u>Standard of Review</u>.    The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." <u>Title 42 U.S.C. §12112(a)</u>; <u>Weber v. Strippit, Inc.</u>, 186 F.3d 907, 912 (8th Cir. 1999), cert. denied, 528 U.S. 1078 (2000); <u>Peyton v. Fred's Stores of Arkansas, Inc.</u>, 561 F.3d 900, 902 (8th Cir. 2009), --- U.S. ---, 130 S.Ct. 243 (2009).

In order to establish entitlement to relief under the ADA, "an aggrieved employee must show that he or she (1) is disabled within the meaning of the ADA, (2) is qualified (with or without reasonable accommodation) to perform the essential functions of the job at issue, and (3) has suffered an adverse employment decision because of the disability." <u>Cravens v. Blue Cross and Blue Shield of Kansas City</u>, 214 F.3d 1011, 1016 (8th Cir. 2000), citing <u>Treanor v. MCI Telecommunications Corp.</u>, 200 F.3d 570, 574 (8th Cir. 2000); <u>Braziel v. Loram Maintenance of Way, Inc.</u>, 943 F. Supp. 1083, 1096 (D. Minn. 1996).  In turn, the ADA defines a disability, as follows:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment * * * . Title 42 U.S.C. §12102(1).

The ADA further provides that major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Title 42 U.S.C. §12102 (2)(A).

      ii)    Legal Analysis.    As pertinent here, the State argues that the Plaintiff's disability discrimination action must be dismissed because he has failed to state a plausible claim that he was disabled within the meaning of the ADA. We agree.

As the case law makes clear, not every injury or impairment is afforded protection under the ADA. The ADA defines a physical impairment as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal,

special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. §1630.2(h)(1). With respect to whether an impairment constitutes a disability, the Appendix to the ADA's implementing Regulations further advises, as follows:

> [T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. **Such impairments may include, but are not limited to, broken limbs, sprained joints, concussions, appendicitis, and influenza.**

Appendix to 29 C.F.R. Part 1630, Section 1630.2(j) [emphasis added]; see also, Gorman v. Wells Manufacturing Corp., 209 F. Supp.2d 970, 975 (S.D. Iowa 2002), aff'd, 340 F.3d 543 (8th Cir. 2003); Gutridge v. Clure, 153 F.3d 898, 901-02 (8th Cir. 1998), cert. denied, 526 U.S. 11113 (1999); Heintzelman v. Runyon, 120 F.3d 143, 145 (8th Cir. 1997).

The Fourth Circuit has explained the exclusion of temporary impairments, as follows:

> Applying the protections of the ADA to temporary impairments * * * would work a significant expansion of the Act. The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to "assure that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps." * * * Extending the statutory protections available under the ADA to individuals with broken bones, sprained joints, sore

> muscles, infectious diseases, or other ailments that temporarily limit an individual's ability to work would trivialize this lofty objective.

Halperin v. Abacus Tech. Corp., 128 F.3d 191, 200 (4th Cir. 1997)[citations omitted], abrogated on other grounds by, Baird ex rel. Baird v. Rose, 192 F.3d 462 (4th Cir. 1999).

As a consequence, the State argues that the Plaintiff has failed to allege that he had a disability because, at most, he has alleged that he had a temporary injury from which he recovered in a matter of months. See, State's Memorandum in Support, Docket No. 18, at pp. 8-9 of 18. The State argues that, "[n]owhere in the Complaint does [the Plaintiff] allege a permanent or lasting injury affecting a major life activity." Id. at p. 9.

For his part, the Plaintiff argues that the State has misconstrued his Complaint, since nowhere does he state that his injury was temporary. See, Plaintiff's Response - State, supra at pp. 2-3¶5. At this stage, of course, the Plaintiff must be permitted to proceed if his factual contentions, when liberally construed by the Court, "raise a right to relief above the speculative level." Bell Atlantic v. Twombly, supra at 555. Here, however, we must agree with the State that the Plaintiff has failed to allege any facts that would support a plausible claim that he suffered from a long term impairment that substantially affected a major life activity.

We are mindful that the Plaintiff did not specifically state that his injury was temporary in his Complaint, but his assertion, in his Response, that his disability was not temporary, without more, does not lend any facial plausibility to the Plaintiff's allegations, which, even if true, would be insufficient to establish that he was disabled within the meaning of the ADA. While the Plaintiff's allegations would be sufficient to show that he suffered an injury that resulted in work restrictions for a few months, the Plaintiff has failed to allege any facts that establish that the Plaintiff suffered any long lasting effects from that injury.

Rather, the Plaintiff has alleged that he suffered a knee injury, that the injury required surgery, that he was unable to perform some of his work duties and walk without restriction during his recovery, and that he was expected to make a full recovery. The Plaintiff further alleges that he had recovered from his injury by May of 2008, and, by his own representations, that his doctor provided a note indicating that he was capable of returning to work, without restriction, at that time. Accordingly, the Plaintiff has simply failed to allege any facts that would plausibly suggest that his injury had a long term, substantial impact on any major life activity, since it is well-established that such temporary impairments do not constitute disabilities within the meaning of the ADA. See, Smith v. Pappell, 2008 WL 4600770

at *4 (D. N.J., October 8, 2008)(granting the defendant's Motion to Dismiss because the plaintiff had failed to allege a disability within the meaning of the ADA, where she alleged that the defendant refused to accommodate a temporary restriction related to her surgery); Harding v. Ellwood Specialty Steel, LLC, 2007 WL 1454272 at *4 (W.D. Pa., May 17, 2007)(holding that the plaintiff had failed to allege that he was disabled within the ADA, where the plaintiff had alleged that he was able to return to work after four (4) months without reservation); Graaf v. North Shore University Hosp., 1 F. Supp.2d 318, 321-322 (S.D.N.Y. 1998)(dismissing ADA claim where the plaintiff's allegations revealed that the his injury was temporary and that he was able to return to work); Roblero-Barrious v. Ludeman, 2008 WL 4838726 at *6 (D. Minn., November 5, 2008)(dismissing ADA claim because a temporary confinement to a wheelchair for three (3) months, for the treatment of a dislocated knee, did not qualify as a disability within the meaning of the ADA); Gutridge v. Clure, supra at 901-02 ("Disability under the ADA requires permanent or long-term impairments * * * and impairments while recovering from surgery are not evidence of a permanent disability.")[citations omitted]; Conant v. City of Hibbing, 131 F. Supp.2d 1129, 1135 n.3 (D. Minn. 2000)("[B]ecause the duration of [the plaintiff's] medical condition was limited, it does not qualify as a disability under the ADA."), aff'd, 271 F.3d 782 (8th

Cir. 2001); <u>Hutchinson v. United Parcel Services, Inc.</u>, 883 F.Supp. 379, 395-96 (N.D. Iowa 1995)(concluding that the plaintiff was not disabled within the meaning of the ADA where the plaintiff's back and shoulder injuries, although not minor injuries, resulted in only temporary impairment, "and that any permanent impairment [was] only slight."); <u>Lajeunesse v. Great Atlantic & Pacific Tea</u>, 160 F. Supp.2d 324, 332 (D. Conn. 2001)("The plaintiff's condition improved after his surgery and much of the discomfort to which he refers was temporary," and "temporary injuries * * * without substantial limitations and permanent effects * * * do not warrant the protections of the ADA.'"), quoting <u>Stronkowski v. St. Vincent's Med. Center</u>, 1996 WL 684407 at *7 (D. Conn. August 1, 1996); <u>Samuels v. Kansas City Missouri School Dist.</u>, 437 F.3d 797, 802 (8th Cir. 2006)(plaintiff failed to establish that she was disabled within the meaning of the ADA where restrictions were not long-term or permanent, and she had no chronic conditions); <u>Bolden v. Magee Women's Hospital of the University of Pittsburgh Medical Center</u>, 281 Fed.Appx. 88, 90 (3rd Cir. 2008)(concluding that the plaintiff was not disabled within the meaning of the ADA

where she "suffered an arm injury constituting a temporary, non-chronic impairment of brief duration, with no long term or permanent effect.").[7]

We note that, in response to the State's Motion, the Plaintiff asserts that he requested a reasonable accommodation, which the employer unlawfully refused to provide. See, Plaintiff's Response-State, Docket No. 26, at p. 3 of 3. However, that assertion does not save the Plaintiff's disability claim. "A plaintiff who is not actually disabled * * * is not entitled to reasonable accommodations -- for the simple reason that an employer cannot be held liable for failing to accommodate a disability that does not exist." Chappell v. Butterfield-Odin School Dist. No. 836, 673 F. Supp.2d 818, 840-841 (D. Minn. 2009), citing Weber v. Strippit, supra at 917 (holding that an employee who is merely "regarded as" as having disability is not entitled to a reasonable accommodation because the employee is not actually disabled); see also, Finan v. Good Earth Tools, Inc., 565 F.3d 1076, 1080 (8th Cir. 2009)(same); Duello v. Buchanan County Bd. of Sup'rs. --- F. supp.2d ---, 2010 WL 1526567 at *9-10

---

[7]Neither the State, nor the Plaintiff, has addressed whether the Plaintiff has alleged that he was "regarded as" having a disability, or had a "record of" having a disability, within the meaning of the ADA. Nevertheless, nothing in the Plaintiff's Complaint, or in his Response, can reasonably be construed as alleging that he intended to assert a "regarded as," or a "record of," disability claim, and as such, we need not address that issue further.

(N.D. Iowa, April 14, 2010)(same). Accordingly, the fact that the Plaintiff did not receive his requested accommodation does not save the Plaintiff's ADA claim, since he cannot establish that he was disabled.

In sum, because the Plaintiff has failed to allege sufficient facts establishing that he was disabled within the meaning of the ADA, we recommend that his ADA claim be dismissed, with prejudice, for failure to state a claim upon which relief can be granted.

2. The Plaintiff's State Law Claims. As previously noted, the Plaintiff has asserted State law claims for disability discrimination under the MHRA, for a breach of contract, and for IIED. As our Court of Appeals explained, in Gibson v. Weber, 433 F.3d 642, 647 (8th Cir. 2006):

> Under 28 U.S.C. §1367(c)(3), a court may "decline to exercise supplemental jurisdiction over a claim * * * [if] the district court has dismissed all claims over which it has original jurisdiction." Congress unambiguously gave district courts discretion in 28 U.S.C. §1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed, and there is no basis to find an abuse of discretion here. See Labickas v. Arkansas State University, 78 F.3d 333, 334 (8th Cir. 1996); McLaurin v. Prater, CO-1, 30 F.3d 982, 985 (8th Cir. 1994).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." Barstad v. Murray County, 420 F.3d 880, 888 (8th Cir. 2005), quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988).

Here, we have found that the Plaintiff has failed to state a viable claim for relief arising under Federal law, and as a consequence, we further recommend that the District Court decline to exercise supplemental jurisdiction over the Plaintiff's remaining State law claims.[8]  This case is in its infancy, and we find that the State Courts are properly equipped to address matters of purely State law.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Union's Motion to Dismiss [Docket No.4] be granted.

---

[8]We note that the Plaintiff has also made ambiguous references to slander, and defamation.  See, Complaint, supra at p. 4¶8; Plaintiff's Response - State, supra at p. 2¶3. Although it is unclear if the Plaintiff is attempting to assert a claim for slander, any such claim would arise under State law, and accordingly, we would also recommend that the Court decline to exercise supplemental jurisdiction over any claim for slander that the Plaintiff is attempting to raise.

2. That the State's Motion to Dismiss [Docket No. 11] be granted, and that the Plaintiff's ADA claim be dismissed, with prejudice, and that the Plaintiff's remaining State law claims be dismissed, without prejudice.

Dated: August 10, 2010                    *s/Raymond L. Erickson*
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 24, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **August 24, 2010**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.